**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| BURNETTE PETE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV628 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Burnette Pete, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court has before it the certified administrative record and Defendant has moved for judgment on the pleadings (Docket Entry 13). Plaintiff, proceeding pro se, simply filed a letter motion asking that his "case be reviewed to make sure that all Social Security backpay that was owed was paid out to

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[him] . . . ." (Docket Entry 10 at 1.)[2] For the reasons that follow, the Court should enter judgment for Defendant.

## PROCEDURAL HISTORY

Plaintiff first applied for DIB and SSI on May 11, 1984, alleging a disability onset date of March 15, 1982. (Tr. 13, 35-44.)[3] Upon initial denial, Plaintiff did not pursue those applications further. (Tr. 13, 45-46.) On February 12, 1987, Plaintiff protectively filed second applications for DIB and SSI, alleging disability since April 12, 1985. (Tr. 13, 47-50.)[4] Those applications were denied initially and on reconsideration (Tr. 13, 51-56), whereupon Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 13).[5]

Following the hearing (see Tr. 60),[6] the ALJ issued a decision, dated November 19, 1987, finding Plaintiff not disabled within the meaning of the Act (Tr. 57-66). Plaintiff requested review of the ALJ's decision with the Appeals Council and completed

---

[2] Plaintiff submitted a second letter to the Court after Defendant filed her Motion for Judgment on the Pleadings, but that letter did not set forth any specific errors Plaintiff believed the ALJ committed. (Docket Entry 15 at 1-2.)

[3] Citations to the administrative record appear as "Tr. __." The record does not contain documents relating to that DIB application.

[4] The record does not contain documents relating to that DIB application.

[5] The record does not contain that request for a hearing.

[6] The record does not contain a transcript of that hearing.

a review card for the Hyatt v. Heckler class action. (Tr. 13.)[7] The Appeals Council remanded Plaintiff's claims to an ALJ for a new hearing. (Tr. 13, 78.)[8] Following the hearing, the ALJ issued a decision on September 27, 1989, finding Plaintiff not disabled within the meaning of the Act. (Tr. 13, 77-86.)[9] Plaintiff apparently did not pursue those claims any further. (See Tr. 13.)

On October 15, 1991, Plaintiff protectively filed a third application for SSI, alleging disability since September 1990, and, after an initial denial, was found disabled as of October 1, 1991. (Id.)[10] Plaintiff still receives SSI. (Tr. 13, 169.)

On May 13, 2008, the Office of Disability Adjudication and Review sent Plaintiff a notice that he had a right to further review of his 1984 and 1987 claims for DIB and SSI "under the HYATT III court case guidelines." (Tr. 146.) Plaintiff and a vocational expert ("VE") attended the resulting hearing. (Tr. 167-75.) The

---

[7] The record does not contain Plaintiff's request for review by the Appeals Council or the review card related to Hyatt, a class action brought to enforce the Fourth Circuit's standard for pain evaluation in disability claims, see Hyatt v. Heckler, 579 F. Supp. 985, 988 (W.D.N.C. 1984), aff'd, 807 F.2d 376 (4th Cir. 1986). A subsequent ruling in the case required reevaluation of the claims of class members, such as Plaintiff. Hyatt v. Bowen, 118 F.R.D. 572, 573 (W.D.N.C. 1987). Ultimately, the court drafted a Social Security Ruling on the pain standard and ordered it distributed to all Social Security adjudicators in North Carolina. Hyatt v. Heckler, 711 F. Supp. 837, 844-48 (W.D.N.C. 1989), aff'd in relevant part, Hyatt v. Sullivan, 899 F.2d 329, 339 (4th Cir. 1990). The Commissioner thereafter issued Social Security Ruling 90-1p (subsequently superceded by Social Security Ruling 96-7p), adopting the Hyatt standard.

[8] The record does not contain that remand order.

[9] The record does not contain a transcript of that hearing.

[10] The record does not contain documents relating to that application.

ALJ noted that, in re-adjudicating claims under Hyatt, the ALJ must consider only the periods before or after any periods for which Plaintiff already received a disability determination. (Tr. 14.)

Accordingly, the ALJ considered whether Plaintiff had been disabled at any time during the following two periods: 1) between his alleged onset date of March 15, 1982, through his date last insured of June 30, 1985 (for purposes of his DIB application); and 2) from the application date of May 11, 1984, through September 30, 1991, the day before the date on which he had previously been found disabled (for purposes of his SSI application). (Id.) The ALJ ultimately issued a decision finding Plaintiff not disabled within the meaning of the Act during the relevant times. (Tr. 10-24.) The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 6-8.)

In making this disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff]'s date last insured for purposes of his May 1984 application is June 30, 1985.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity during the *Hyatt* periods . . . (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. During the *Hyatt* periods, [Plaintiff] had the following severe impairments: seizure disorder and chronic alcoholism (20 CFR 404.1520(c) and 416.920(c)).
>
> . . .

> 4. During the *Hyatt* periods, [Plaintiff] d[id] not have an impairment or combination of impairments that me[t] or medically equal[ed] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that during the *Hyatt* periods, [Plaintiff] had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he should have avoided concentrated exposure to heights/hazards.

(Tr. 16-18.)

In light of the findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff could have performed his past relevant work as a pizza delivery man. (Tr. 23.) The ALJ thus decided that Plaintiff was not under a "disability" (per the Act) during any time at issue. (Id.)

**DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [the administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were

reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based

upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[11] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Hall, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial

[11] "The Social Security Act comprises two disability benefits programs. The [DIB] Program . . . provides benefits to disabled persons who have contributed to the program while employed. The [SSI] Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

gainful activity,’ i.e., currently working; and (2) must have a ‘severe’ impairment that (3) meets or exceeds the ‘listings’ of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant’s] past work or (5) any other work.” Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[12] A finding adverse to a claimant at any of several points forecloses a disability award and ends the inquiry. For example, “[t]he first step determines whether the claimant is engaged in ‘substantial gainful activity.’ If the claimant is working, benefits are denied. The second step determines if the claimant is ‘severely’ disabled. If not, benefits are denied.” Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, “the claimant is disabled.” Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., “[i]f a claimant’s impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant’s residual functional capacity (‘RFC’).” Id. at 179.[13] Step four then requires the ALJ to assess

[12] “Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . .” Hunter, 993 F.2d at 35 (internal citations omitted).

[13] “RFC is a measurement of the most a claimant can do despite [the claimant’s] limitations.” Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant’s “ability to do sustained work-

whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[14]

**Assignments of Error**

As noted above, Plaintiff does not assign any particular error to the ALJ's decision, but instead asks the Court to generally

---

related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[14] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

review his case to ensure that he received all benefits due. (Docket Entry 10 at 1; see also Docket Entry 15 at 1-2 (appearing to oppose Defendant's instant Motion, but without identifying mistakes by ALJ).) Defendant contends that substantial evidence supports the ALJ's determination that Plaintiff was not disabled. (Docket Entry 14 at 5-15.) Review of the entire record confirms that substantial evidence supports the ALJ's determination that Plaintiff was not disabled during the Hyatt periods.

At step two, the ALJ found that Plaintiff suffered from two severe impairments during the Hyatt periods: seizure disorder and chronic alcoholism. (Tr. 16.) Substantial evidence supports this finding. (Tr. 61-62, 110-14.)[15] Turning to step three, the ALJ found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled any of the Commissioner's listed impairments. (Tr. 17.) In particular, the ALJ considered the listings in section 11.00 (neurological disorders, including epilepsy), 12.02 (organic mental disorders), and 12.09(A)

[15] Although Plaintiff's records from the Hyatt periods reflect additional diagnoses of peripheral neuropathy and hypertension (see Tr. 61, 115-42), substantial evidence supports a determination that these impairments were non-severe. The medical expert at Plaintiff's October 21, 1989 hearing testified that Plaintiff's history of elevated blood pressure around 1984 represented an isolated event and that resort to simple antihypertensive medication produced normal readings. (Tr. 63.) The expert further opined that Plaintiff's antihypertensive medication would increase his need to urinate, but would not interfere with his ability to work under normal conditions. (Id.) Similarly, the expert described Plaintiff's neuropathy as mild and of insignificant effect on his ability to perform basic work-related functions. (Tr. 63-64.)

(substance addiction disorders manifesting as organic brain disorders). Again, substantial evidence supports those findings.

Section 11.02, covering convulsive epilepsy, requires seizures occurring more frequently than once monthly in spite of at least three months of prescribed treatment. 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 11.02. This listing also requires daytime episodes involving loss of consciousness and convulsive seizures or nocturnal episodes with residuals that interfere with daily activities. (Id.) Listing 11.03, covering nonconvulsive epilepsy, requires, inter alia, seizures occurring more frequently than once weekly in spite of at least three months of prescribed treatment. 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 11.03. Plaintiff's treatment records and testimony do not demonstrate the criteria necessary to meet or equal these listings at the time in question.

For example, at a consultative examination on June 19, 1984, Plaintiff reported a two-year history of seizures occurring every one to two months. (Tr. 62.)[16] Moreover, a blood test revealed that Plaintiff had not been taking sufficient quantities of his anti-seizure medication, Dilantin. (Id.) By the November 19, 1987 hearing, Plaintiff testified that he had only experienced one seizure since April 1985, in December 1986. (Tr. 61.) By February

---

[16] The transcript citation refers the ALJ's November 19, 1987 decision in which the ALJ discusses this consultative examination. The record does not contain a copy of the examination itself.

28, 1990, Plaintiff informed his doctor that he would not take Dilantin any more and that he no longer had any seizures at all. (Tr. 121.) Thus, substantial evidence supports the ALJ's determination that Plaintiff's seizures did not meet or equal the severity of the listings contained in Section 11.00.

Listings 12.02 and 12.09(A) require at least two of the following findings (also known as the "B" criteria):

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R., Pt. 404, Subpt. P, App'x 1, §§ 12.02, 12.09(A). The ALJ cited to Plaintiff's testimony at his hearing on October 21, 1987, as well as a Report of Contact dated March 10, 1987, as support for findings that Plaintiff had <u>no</u> limitation in daily activities or social functioning during the <u>Hyatt</u> periods. (Tr. 17.) That evidence showed that Plaintiff grocery shopped, used public transportation, drove 15 miles per week, watched television, played cards, and occasionally performed housework including cooking, washing dishes, making beds, sweeping, mopping, and taking out the garbage. (<u>Id.</u>; <u>see also</u> Tr. 61.) Such record material constitutes substantial evidence to support the ALJ's findings regarding daily activities and social functioning. Finally, the

ALJ observed that Plaintiff had not experienced any episodes of decompensation of extended duration (Tr. 17) and review of the record revealed no evidence contradicting that finding.[17]

Absent satisfaction of the "B" criteria, a claimant still can meet Listings 12.02 and 12.09(A), by satisfying one of the following (also known as "C" criteria):

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history or 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R., Pt. 404, Subpt. P, App'x 1, §§ 12.02, 12.09(A). Again, the record lacks any evidence that would satisfy any of the "C" criteria and thus substantial evidence supports the ALJ's finding that Plaintiff's alcoholism did not meet or equal Listings 12.02 and 12.09(A) during the Hyatt periods.

At step four, the ALJ found that, at the relevant times, Plaintiff retained the RFC to perform medium work[18] that did not

[17] Because the record supports the ALJ's findings adverse to Plaintiff for three of the four functional areas and Plaintiff had to satisfy two of those four, no need exists to discuss the fourth functional area, because any error related thereto could not impact resolution of the issue before the Court (i.e., whether the ALJ erred by finding that Plaintiff failed to meet this listing).

[18] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c); 20 C.F.R. § 416.967(c).

involve concentrated exposure to heights and hazards. (Tr. 18.) In support of his RFC finding, the ALJ relied upon a consultative examination performed by Dr. Edgar Marks on June 19, 1984. (Tr. 20.) Dr. Marks's physical examination of Plaintiff revealed no limitations in Plaintiff's ability to lift, carry, sit, stand or walk. (Id.; see also Tr. 61-62.) Dr. Marks recommended that Plaintiff avoid dangerous situations due to his history of seizures and described his prognosis as good with the cessation of alcohol consumption. (Tr. 20, 62.) In addition, the ALJ relied upon Plaintiff's treatment records from the Moses Cone Outpatient Clinic from October 14, 1986, to November 13, 1991. (Tr. 115-41.) Those records reflect largely normal physical examinations with the exception of mild sensory neuropathy in his feet secondary to his alcohol abuse. (Id.) As noted by the ALJ, the records further reflect that Plaintiff often failed to comply with his treatment regimen, including refusing to take prescribed medication and declining a referral to a neurologist; as a result, the ALJ concluded that Plaintiff's impairments were not as significant as alleged. (Tr. 21-22; see also Tr. 119, 121, 124, 129, 140.) Substantial evidence thus supports the ALJ's RFC findings.[19]

[19] Arguably, the ALJ should have included a non-exertional limitation to unskilled, routine and repetitive work in Plaintiff's RFC. Plaintiff has a seventh grade education and a mental examination revealed borderline intellectual ability. (Tr. 81, 143-45.) Nevertheless, any such error by the ALJ remains harmless, in light of the ultimate conclusion that substantial evidence supports the ALJ's determination that Plaintiff could have returned to his past relevant work. See Camp v. Massanari, No. 01-1924, 2001 WL 1658913, at *1 (4th Cir. Dec.

Finally, at the hearing, the ALJ called a vocational expert ("VE") to analyze the physical and mental demands of Plaintiff's past relevant work. (Tr. 173.) The VE testified that Plaintiff performed his past relevant work as a pizza delivery man at the medium level of exertion and that such work corresponded to the job of "Deliverer, Food," number 299.477-010, in the Dictionary of Occupational Titles ("DOT"). (Id.) Based on the VE's testimony, the ALJ concluded that, at the relevant times, Plaintiff retained the RFC to perform his past relevant work as a pizza delivery man. (Tr. 23.) Substantial evidence supports that determination.

The DOT listing for Deliverer, Food, number 299.477-010, constitutes medium work not involving any exposure to heights or hazards with a Specific Vocational Preparation ("SVP") of two, which means that the length of time necessary to learn the job ranges from anything longer than a short demonstration up to one month of training or on-the-job experience. Dictionary of Occupational Titles, 299.477-010 (1991). Jobs with an SVP of one or two represent unskilled work. See Social Security Ruling 00–4p, Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704, at *3. Furthermore, Plaintiff successfully

27, 2001) (unpublished) (applying harmless error standard and refusing to remand absent a showing of prejudice); Anderson v. Colvin, No. 1:10CV671, 2013 WL 3730121, at *6 (M.D.N.C. Jul. 12, 2013) (unpublished) (same, citing Camp).

performed the job of pizza delivery man for a year and a few months during the latter portion of the Hyatt periods. (Tr. 170-71.) Accordingly, substantial evidence supports the ALJ's finding that, at the times in question, Plaintiff could have returned to his past relevant work. The Court thus should uphold the ALJ's conclusion that Plaintiff was not disabled during the Hyatt periods.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, that Plaintiff's Letter Motion (Docket Entry 10) be denied, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 30, 2014